## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.

KARINA TSEDIK,

    Plaintiff,

vs.

1 YCM HOLDINGS, LLC, a Florida limited
liability company; and YANIV ELIYAHU,
individually,

    Defendants.
_____/

### COMPLAINT AND JURY TRIAL DEMAND

Plaintiff KARINA TSEDIK, through undersigned counsel, sues Defendants 1 YCM HOLDINGS, LLC, a Florida limited liability company ("YCM"), and YANIV ELIYAHU, individually ("ELIYAHU"), and alleges as follows:

1. This is an action for unlawful failure to pay overtime compensation as required by the federal Fair Labor Standards Act, 29 U.S.C. §207(a) ("FLSA"), and its implementing regulations, and for violation of 26 U.S.C. §7434. In addition, this is an action for common law fraud and violation of the Florida Civil Theft statute, §772.11, Fla. Stat.

2. This Court has jurisdiction over this case based on federal question jurisdiction, 28 U.S.C. §1331, the provisions of the FLSA, 29 U.S.C. §216(b), and 26 U.S.C. §7434. In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court as all actions complained of herein occurred in Miami Beach, Miami-Dade County, Florida, in the Southern District of Florida.

4. Plaintiff at all relevant times was, and still is, a resident of Miami-Dade County, Florida, and is *sui juris*.

5. Defendant YCM is, and at all relevant times was, a Florida for-profit corporation doing business in Broward County, Florida. YCM is, and at all relevant times was, a company providing yacht charters and luxury car rental and leasing services that, upon information and belief, used, purchased, and sold materials and goods in interstate commerce, and had annual gross revenues in excess of $500,000.00.

6. Defendant ELIYAHU is, and at all relevant times has been, a resident of Broward County, Florida, and is *sui juris*. At all relevant times, ELIYAHU was and still is an owner and operator of YCM, was and still is an agent of YCM, and acted in the course and scope of his employment as owner and operator of YCM with regards to Plaintiff.

7. At all relevant times YCM was and still is an "employer" under the FLSA for purposes of enterprise coverage in that it was an enterprise that had two or more employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and had gross annual revenues of not less than $500,000.00. In addition, ELIYAHU was at all relevant times, and still is, a statutory "employer" under the FLSA in that he acted, directly or indirectly, on behalf of YCM in relation to Plaintiff, and regularly exercised authority to hire and fire employees of YCM, determined the work schedules of employees of YCM, set the rates of pay and compensation for employees of YCM, and controlled the finances and operations of YCM.

8. At all times during her employment with Defendants, from in or about June 11, 2014 through on or about May 11, 2020, Plaintiff was a non-exempt employee who regularly worked over 40 hours in one or more work weeks.

9. At all relevant times Plaintiff was deliberately and intentionally misclassified by Defendants as an independent contractor when in fact she worked and performed services for Defendants as an employee. Specifically, at all relevant times: (1) the services that Plaintiff performed for Defendants as their office manager were and are an integral part and primary function of Defendants' businesses; (2) Defendants fully and solely controlled Plaintiff's day-to-day work, including setting Plaintiff's work schedules, directing Plaintiff's work, and requiring Plaintiff to perform all work each week on Defendants' premises; (3) Plaintiff was provided and required by Defendants to use equipment and tools that were owned by Defendants; (4) Plaintiff was required to work at Defendants' premises for at least five days, and sometimes more, per week for full work days; (5) Plaintiff was not permitted to work, nor was given the time to work, for any other persons or companies doing similar work; and (6) Plaintiff was not permitted to offer or provide her work to any competing persons or businesses during her employment with Defendants. Defendants were aware at all relevant times that Plaintiff was an employee of Defendants, yet intentionally misclassified her as an independent contractor to avoid paying federal FICA tax, Social Security, and Medicare withholdings on her behalf, and to avoid paying her overtime per the requirements of the FLSA.

10. At all relevant times there was and is individual coverage of Plaintiff under the FLSA as she regularly and in the ordinary course and scope of her work for Defendants would use the instrumentalities of interstate commerce, such as the telephones, mail, internet, and email; would regularly by telephone, mail and email communicate with Defendants' customers and third party vendors located in states and countries outside the state of Florida; would regularly solicit and enter into contracts, car rentals and leases, and yacht charters with customers located in states and countries outside the state of Florida; would regularly purchase goods and

supplies on behalf of Defendants from third parties located outside the state of Florida; and would regularly handle goods, products, and materials that were manufactured and moved in interstate commerce.

11. Plaintiff was employed by Defendants as their office manager to handle all of Defendant's office matters, including payroll, communicating with and paying vendors and suppliers, communicating with customers, problem solving customer issues and complaints, responding to customer inquiries, handling bookkeeping and company paperwork matters, scheduling car rentals and leasing and yacht charters, and overseeing Defendant's day-to-day operations. For the three-year period immediately preceding the filing of this Complaint, Plaintiff was paid a regular hourly rate of $22.00, plus commissions on customers that she brought in. However, Plaintiff regularly worked more than forty (40) hours in one or more work weeks during the three-year period immediately preceding the filing of this Complaint, but was not paid the requisite full time and one-half overtime compensation for each hour worked more than forty (40) hours, as required by the FLSA. Specifically, although Plaintiff was paid her regular hourly rate for each hour she worked, including each overtime hour, she was not paid the extra half time rate of $11.00 per hour for each overtime hour, as required by the FLSA.

12. For the 32-month period preceding and through May 11, 2020, Plaintiff estimates that she worked a total of approximately 800 to 1,024 hours of overtime for which she is owed approximately $8,800.00 to $11,264.00 in overtime compensation based on a half-time rate of $11.00 per hour, and an approximately 640 to 800 hour of overtime for which she is owed approximately $21,120.00 to $26,400.00 based on a time and one-half rate of $33.00 per hour.

13. While Plaintiff kept and maintained some records of her pay and time records, the complete records of the compensation actually paid to Plaintiff should be in the possession,

custody, and control of Defendants. However, upon information and belief Defendants failed to keep and maintain any of the required records of hours worked by and wages paid to its employees, including Plaintiff, per the record-keeping requirements of the FLSA.

14. All conditions precedent to the filing of this action have been satisfied, waived, or otherwise excused.

15. Plaintiff has hired the undersigned law firm to represent her in this case and has agreed to pay the firm a reasonable fee for its services.

## COUNT I – UNPAID OVERTIME VIOLATION OF FLSA

16. Plaintiff re-alleges paragraphs 1 through 15 as if set forth fully herein.

17. Under the FLSA, Defendants were obligated to pay Plaintiff one and one-half times her hourly pay rate for all hours she worked more than forty (40) hours per work week. However, Plaintiff worked more than forty (40) hours in one or more work weeks and was not paid the extra half-time premium for her overtime work.

18. Defendants have failed and refused to pay Plaintiff the required extra overtime pay for all hours Plaintiff worked more than forty (40) hours per work week, in violation of the FLSA overtime requirements under 29 U.S.C. §206(a).

19. As a direct and proximate result of Defendants' violations of the FLSA, Plaintiff has suffered damages equal to one-half her regular hourly rate of pay of $22.00 for all overtime hours worked where she was paid straight time and one and one-half her regular hourly rate of pay of $22,.00 for all overtime hours she worked for which she received no compensation. Specifically, Plaintiff estimates that she worked a total of approximately 800 to 1,024 hours of overtime for which she is owed approximately $8,800.00 to $11,264.00 in overtime compensation based on a half-time rate of $11.00 per hour, and an approximately 640 to 800

5

hour of overtime for which she is owed approximately $21,120.00 to $26,400.00 based on a time and one-half rate of $33.00 per hour.

20. Defendants engaged in their overtime pay violations under the FLSA, including their intentional misclassification of Plaintiff as an independent contractor when in fact she was an employee, willfully, intentionally, and in reckless disregard of the rights of Plaintiff under the law.

21. Plaintiff is entitled to recover her costs, expenses, and reasonable attorney's fees under the FLSA.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for all unpaid overtime as required under the FLSA, liquidated damages, interest, costs, expenses, attorney's fees, and such further relief as the Court deems just and equitable.

**COUNT II – VIOLATION OF FLA. STAT. § 772.11 (CIVIL THEFT) AGAINST ELIYAHU**

22. Plaintiff re-alleges paragraphs 1 through 15 as if set forth fully herein.

23. Florida Statutes §772.11 provides a civil remedy to any person who is the victim of the crime of theft committed by another person, as set forth in Florida Statutes §812.014.

24. In or about late July or early August 2017, while Ms. Tsedik was employed by Defendants, ELIYAHU, as Plaintiff's immediate supervisor and boss, made false representations to Plaintiff to pay him, through another company he owned, Boo Bah Enterprise, LLC ("Boo Bah"), via checks and wire transfers, a total of $42,599.43, to purchase certain residential real estate located in the state of Michigan. ELIYAHU convinced Plaintiff to part with her money by falsely representing to her that she would be partners and co-owners with ELIYAHU in the property purchases with the intention that the properties would be flipped to realize large financial gains, and that ELIYAHU would then share equally with Plaintiff in those gains. After

taking Plaintiff's money, however, ELIYAHU used it to purchase properties in his own or his company's name, without any intention of having Plaintiff be a partner with him in the investments and without any intention of repaying Plaintiff any of her monies or paying her any financial gains realized from the sales of the properties.  Plaintiff repeatedly asked ELIYAHU for information about the investments; however, he refused to give it to her and further refused to give her any accounting of how the funds were used.  When Plaintiff requested that ELIYAHU return the funds to her, he refused to do so, feigning ignorance of any partnership between him and her or any obligation by him to account to her for the use of the funds.

25.     On or about March 24, 2020, ELIYAHU again made false representations to Plaintiff of entering into an investment partnership with him to cause her to pay him, again through payments to Boo Bah, a total of $10,000.00 of her personal funds.  ELIYAHU specifically represented to Plaintiff that he would be investing her and his own money, in equal amounts, in the stock market through a Raymond James brokerage account, and that he would share in the investment proceeds equally with her when the stock market had rebounded from its novel coronavirus lows.  ELIYAHU then took Plaintiff's money and invested it in a Raymond James account, but only in his own name and not in her name.  Although ELIYAHU initially gave Plaintiff online access to the view the account, purportedly to enable her to track the investment results, ELIYAHU suddenly, and without explanation, cut off Plaintiff's access to the account with the online investment information, with the intention of keeping all the money in the account, including the funds Plaintiff had given him, for himself.  When Plaintiff then made inquiry of ELIYAHU about the account and requested continuing access to it, ELIYAHU claimed to have no knowledge about any joint investment or any investment partnership with Plaintiff, and blocked her to online access the account information.  As with the real estate

7

investments discussed in paragraph 24 above, when Plaintiff asked ELIYAHU for a return of her money that she had paid him, he refused to do so.

26. ELIYAHU thus obtained the property of Plaintiff – specifically Plaintiff's personal monies and funds – through false and deceitful representations and with the intent to permanently appropriate and deprive Plaintiff of the monies and funds for his own personal use or to the use of other persons or entities not entitled to the use of the property.

27. As a direct and proximate cause of ELIYAHU's theft of Plaintiff's monies and funds, Plaintiff has suffered damages in the amount of $52,599.43 the funds she paid ELIYAHU, plus interest thereon from the dates the funds were obtained by ELIYAHU.

28. As a condition precedent to filing this claim against Defendants, Plaintiff, through her undersigned counsel, sent to Defendants then counsel, the pre-suit notice required by §772.11(1), Fla. Stat., a copy of which is attached as Exhibit "A".

29. Per §772.11(1), Fla. Stat., Plaintiff is entitled to recover from ELIYAHU treble the amount of her actual damages sustained, plus costs, including reasonable attorney's fees.

WHEREFORE, Plaintiff demands entry of judgment against Defendant ELIYAHU for threefold Plaintiff's actual damages ($157,798.29), plus interest, costs, reasonable attorney's fees, and such further relief as the Court deems just and proper.

## **COUNT III – FRAUDULENT MISREPRESENTATION AGAISNT ELIYAHU**

30. Plaintiff re-alleges paragraphs 1 through 15 and 24 through 26 as if set forth fully herein.

31. ELIYAHU made the false representations to Plaintiff knowing that they were not true; i.e., knowing that he never had any intention of entering into any partnership or proceeds splitting with Plaintiff of any real estate and stock investments that were made with the use of

Plaintiff's funds. ELIYAHU made the false statements of fact to Plaintiff with the intention of permanently depriving her of the use of and proceeds derived from the funds and using the funds for his personal purposes and gain.

32. The false representations that ELIYAHU made to Plaintiff were false statements of material fact that induced Plaintiff to give ELIYAHU the funds. Had Plaintiff known that ELIYAHU never intended to use the funds for Plaintiff's benefit or to pay her any proceeds from the investments he made with the funds, she would not have given ELIYAHU the funds.

33. Plaintiff thus reasonably relied on ELIYAHU's false statements of fact in paying the monies and funds to ELIYAHU.

34. As a direct and proximate cause of ELIYAHU's false and fraudulent misrepresentations to Plaintiff, Plaintiff has suffered damages in the loss of her funds in the total amount of $$52,599.43, plus interest thereon from the dates that the funds were paid to ELIYAHU by Plaintiff.

35. ELIYAHU engaged in his fraudulent conduct as described hereinabove willfully, intentionally, maliciously and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands entry of judgment against Defendant ELIYAHU for her compensatory damages, plus interest, costs, and such further relief as the Court deems just and proper.

### **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury of all issues so triable.

DATED: August 12, 2020.

                        RODERICK V. HANNAH, ESQ., P.A.
                        Attorneys for Plaintiff
                        4800 North Hiatus Road
                        Sunrise, FL 33351-7919
                        Telephone: (954) 362-3800
                        Facsimile: (954) 362-3779
                        Email: rhannah@rhannahlaw.com

By   /s/ *Roderick V. Hannah*
       Roderick V. Hannah
       Fla. Bar No. 435384